RECEIVED
USDC CLERK, COLUMBIA, SC
2026 SEP -8 PM 2: 17

**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **EDWARD FIELDING HUCKS,**<br>Plaintiff,<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES LLC;**<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.; and**<br><br>**TRANS UNION LLC,**<br>Defendants. | **Civil Action Number:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Edward Fielding Hucks alleges the following against Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC based on personal knowledge as to his own acts and records and, as to Defendants' internal acts, on information reasonably inferred from the consumer disclosures, dispute results, and third-party credit pulls described below:

## I. NATURE OF THE ACTION

1. This action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Plaintiff directly disputed accounts that contained material, objectively verifiable inaccuracies and misleading inconsistencies in his files. Defendants nevertheless continued to maintain and furnish adverse information without reconciling the specific contradictions identified below.

2. The challenged information concerned charge-offs, delinquency status, past-due amounts, payment dates, account identity, identifying information, and a collection. Those subjects

bear directly on perceived creditworthiness and are material to a creditor deciding whether to extend credit.

3. After the disputes, reinvestigation activity, and post-dispute disclosures, American Express and Discover each obtained Plaintiff's consumer reports from Equifax, Experian, and Trans Union on August 30, 2026. Each lender denied Plaintiff's application. The challenged adverse information had not been fully corrected when Defendants furnished those reports.

4. Plaintiff does not sue any furnisher in this action. This complaint addresses only each consumer reporting agency's own procedures, reinvestigation, maintenance, and publication of Plaintiff's information.

## II. PARTIES

5. Plaintiff Edward Fielding Hucks is a natural person and consumer within the meaning of 15 U.S.C. § 1681a(c). He resides at 5 Chapel Creek Road, Pawleys Island, South Carolina 29585-5218, in Georgetown County.

6. Defendant Equifax Information Services LLC is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f). Equifax compiles and furnishes consumer reports nationwide, including reports about Plaintiff to creditors evaluating applications in South Carolina.

7. Defendant Experian Information Solutions, Inc. is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f). Experian compiles and furnishes consumer reports nationwide, including reports about Plaintiff to creditors evaluating applications in South Carolina.

8. Defendant Trans Union LLC is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f). Trans Union compiles and furnishes consumer reports nationwide, including reports about Plaintiff to creditors evaluating applications in South Carolina.

## III. JURISDICTION, VENUE, AND JOINDER

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under federal law, and under 15 U.S.C. § 1681p because the claims arise under the Fair Credit Reporting Act.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District. Plaintiff received and reviewed the reports and results, sent the disputes, applied for credit, and sustained the effects of the denials while residing in South Carolina.

11. Each Defendant is subject to personal jurisdiction because it regularly conducts consumer reporting business in South Carolina, maintains a file about a South Carolina resident, and furnished reports about Plaintiff for credit transactions affecting him in South Carolina.

12. Assignment to the Charleston Division is proper because Plaintiff resides in Georgetown County and a substantial part of the resulting injury occurred there.

13. Joinder is proper under Federal Rule of Civil Procedure 20(a)(2). The claims arise from the same series of transactions and occurrences, including Plaintiff's coordinated disputes, Defendants' overlapping reporting of the same accounts, and their contemporaneous August 30, 2026 publications to the same two creditors. Common questions include whether the identified information was materially inaccurate or misleading and whether the procedures used after direct notice were reasonable.

## IV. FACTUAL ALLEGATIONS

### A. Adverse Accounts and Material Inaccuracies

14. During August 2026, Plaintiff obtained and reviewed current disclosures and results from Defendants, including Equifax results dated August 18, 2026, an Experian report and results dated August 23, 2026, and a Trans Union report dated August 23, 2026.

15. Across the three files, the adverse or potentially adverse accounts included DISC/CAP1 or Discover account 601101202835 or ending 4123; Ford Motor Credit account 6174 or ending 2269; four JPMCB accounts beginning 414720, 424631, 424631, and 426684; Sheffield Financial account 212133 or ending 5903; Toyota Motor Credit account 7040266511598 or ending 0001; and, on Experian only, Rozlin Financial Group collection account 18034046.

16. The reports characterized six of those obligations as charge-offs, reported the Rozlin item as a $600 collection, reported current or historical delinquency on Sheffield, and continued to classify the Toyota account as potentially adverse despite its paid and closed status.

17. Equifax's August 18 results reported a Toyota date of last payment of August 20, 2025, while the payment history in the same Equifax results showed a payment of $22,820 on December 23, 2025. Both dates cannot be the last payment. This was an internal, objectively verifiable inconsistency in Equifax's own data.

18. Equifax's August 18 results also reported a Discover date of last payment of January 28, 2025, while the detailed history in the same results displayed April 9, 2025 as the last-payment date. This was another internal, objectively verifiable inconsistency.

19. Equifax reported Sheffield as 30 to 59 days past due with a balance of $10,801 and $378 past due as of August 18, 2026. The August 23 Experian report and Trans Union report instead showed Sheffield current, with a $10,085 balance following a $716 payment on

July 2, 2026. The dispute required verification of the current status, balance, past-due amount, and effective reporting date, not merely confirmation that an account existed.

20. Experian continued to associate Plaintiff's file with the facially garbled names 'EDWARD HUCKSHUCKS' and 'EDWARDS FIELDING HUCKS.' Those identifiers did not accurately state Plaintiff's name, Edward Fielding Hucks, and created a material risk that information belonging to another person or a corrupted identity record would be matched to him.

21. Experian displayed two separate JPMCB business-card entries under the same visible account number 424631545119, one with a $12,805 balance and another with an $18,331 balance. The entries carried different opening information and adverse histories, yet the consumer-facing disclosure did not provide a reliable way to distinguish them. Reporting two materially different obligations under the same visible identifier was misleading and created a risk of double counting or conflation.

22. Trans Union described the paid and closed Toyota account as 'was Paid as agreed,' while the history in the same disclosure showed a 30-day delinquency for October 2025 and a 60-day delinquency for November 2025. The unqualified status and the historical grid conveyed inconsistent descriptions of the same account.

23. Trans Union's August 23 disclosure identified 230 Saint James Street, Georgetown, South Carolina as Plaintiff's current address and treated 5 Chapel Creek Road as another address, even though 5 Chapel Creek Road was Plaintiff's current address and the address he used in his disputes. Correct current-address data was objectively and readily verifiable from Plaintiff's direct correspondence.

24. Trans Union reported an expected removal date of February 2030 for JPMCB account beginning 414720 while the payment history in the same disclosure showed the continuous delinquency sequence beginning much later. The unexplained mismatch made the reported delinquency chronology incomplete and internally inconsistent.

25. The challenged items were not abstract legal disputes. They concerned dates, dollar amounts, status codes, identifiers, and identity information that could be checked against Defendants' own files, Plaintiff's correspondence, and the underlying account records.

26. A reasonable creditor could view a current past-due amount, a later payment date, a duplicated or conflated charge-off, an unresolved collection, a corrupted name, or a conflicting delinquency history differently when assessing credit risk. The inaccuracies and omissions were therefore material and capable of causing an adverse credit decision.

**B. Plaintiff's Direct Disputes**

27. On August 4, 2026, Plaintiff prepared and mailed a separate written dispute to each Defendant by certified mail. The letters identified disputed adverse accounts by furnisher and account number, challenged their accuracy and completeness, requested reinvestigation, and requested deletion of information that could not be verified.

28. The Equifax dispute was sent under certified-mail tracking number 9214 8901 4298 0493 3245 78. The Experian dispute was sent under tracking number 9214 8901 4298 0493 3245 54. The Trans Union dispute was sent under tracking number 9214 8901 4298 0493 3246 91.

29. Plaintiff's letters also requested a description of the procedure used to determine the accuracy and completeness of each disputed item, including the furnisher contact information. The materials Defendants later provided did not contain a substantive account-by-account explanation reconciling the contradictions identified in this complaint.

30. Each Defendant received and processed Plaintiff's dispute. That receipt and processing are reflected by the ensuing Equifax and Experian results, the continued post-dispute Trans Union disclosure, and each Defendant's maintenance of the challenged information after Plaintiff's direct notice.

31. The disputes were neither frivolous nor irrelevant. They identified specific accounts and requested verification of the information reported for those accounts. No Defendant notified Plaintiff that his dispute was frivolous or irrelevant.

**C. Individual Responses**

32. Equifax issued results dated August 18, 2026 under confirmation number 6222555165. Equifax deleted two JPMCB charge-offs, accounts ending 3666 and 6164, demonstrating that Plaintiff's dispute required and produced account-level review rather than wholesale rejection.

33. Equifax nevertheless retained or updated the Discover charge-off ending 4123, the Ford charge-off ending 2269, JPMCB charge-offs ending 7451 and 8419, the Sheffield delinquency ending 5903, and the Toyota account ending 0001. Its results left unresolved the conflicting last-payment dates and current-status data stated above.

34. Equifax's partial deletion does not cure the remaining violations. Once Equifax had direct notice and was already reviewing the file, reasonable procedures required it to resolve facial contradictions in its own disclosure before continuing to furnish those fields.

35. Experian's August 23, 2026 report number 3839-4792-42 characterized different items as 'Verified and Updated,' 'Updated,' or 'Remains.' It maintained the six charge-offs, the Rozlin collection, Sheffield, and Toyota, and it continued to display the corrupted name variants.

36. Experian used standardized result language stating that disputed information had been verified, updated, or remained. That language did not identify what underlying records were reviewed, did not explain how the two JPMCB entries with the same visible account number were distinguished, and did not explain why the garbled identity data remained associated with Plaintiff.

37. Experian's notices dated August 27, 2026 further stated that JPMCB accounts beginning 426684, 414720, and 424631, and the Ford account beginning 617422, had not been changed and would remain on Plaintiff's credit report. Those notices confirmed continued maintenance after the direct dispute.

38. Trans Union's August 23, 2026 disclosure, file number 458403431, continued to report the six charge-offs, Sheffield, and Toyota after Plaintiff's direct dispute. It continued to report the contradictory Toyota description, the inaccurate current-address designation, and the unexplained JPMCB delinquency chronology.

39. For each Defendant, a response from a furnisher could confirm that an account existed without resolving whether the particular date, balance, status, identity field, or presentation challenged by Plaintiff was accurate and complete. The continued facial contradictions support the reasonable inference that each Defendant accepted coded or conclusory confirmations without conducting the additional review warranted by the dispute.

40. No result supplied to Plaintiff explained how the materially conflicting fields were reconciled. The post-dispute disclosures instead showed that the conflicts remained.

**D. Post-Dispute Publications and Credit Denials**

41. On August 30, 2026, after the reinvestigation activity described above, Plaintiff applied to American Express for a credit card or line of credit. American Express obtained Plaintiff's consumer report from each Defendant in connection with the application.

42. On information and belief, each report furnished to American Express continued to contain adverse information that the furnishing Defendant had maintained in Plaintiff's file after the dispute, including one or more of the material inaccuracies or misleading inconsistencies identified above.

43. American Express denied Plaintiff's application on August 30, 2026. The three consumer reports and the adverse information they contained were a substantial factor in the credit decision.

44. Also on August 30, 2026, Plaintiff applied to Discover for a credit card. Discover obtained Plaintiff's consumer report from each Defendant in connection with the application.

45. On information and belief, each report furnished to Discover continued to contain adverse information that the furnishing Defendant had maintained after the dispute, including one or more of the material inaccuracies or misleading inconsistencies identified above.

46. Discover denied Plaintiff's application on August 30, 2026. The three consumer reports and the adverse information they contained were a substantial factor in the credit decision.

47. The disclosures and results dated within days of the August 30 pulls showed that the challenged items remained in Defendants' files. In the absence of any intervening correction notice, it is reasonable to infer that the reports furnished to American Express and Discover contained the same unresolved adverse information. The exact report transmissions and coding are within Defendants' exclusive possession.

48. The reports were published to third-party creditors and used in actual credit transactions. Plaintiff's injury is therefore not limited to the existence of information in an internal file.

49. As a direct and proximate result, Plaintiff lost two concrete opportunities to obtain credit, suffered harm to his credit reputation before two lenders, and expended time and effort

reviewing reports, preparing disputes, tracking responses, and attempting to correct the files.

## V. COUNT I: FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY

### 15 U.S.C. § 1681e(b), Against All Defendants

50. Plaintiff incorporates paragraphs 1 through 49 as if fully stated here.

51. Each Defendant prepared and furnished at least two consumer reports about Plaintiff on August 30, 2026, one to American Express and one to Discover. Section 1681e(b) therefore applied to each report.

52. Equifax furnished reports after receiving a direct dispute of accounts that displayed conflicting last-payment dates and current-status fields in Equifax's own file. Its continued reporting without reconciling those facial contradictions supports a plausible inference that Equifax lacked or failed to apply a procedure that compared related fields for consistency before publication.

53. Experian furnished reports after receiving a direct dispute of the adverse accounts while its file still contained corrupted name variants and two materially different JPMCB entries under the same visible identifier. Its continued reporting supports a plausible inference that Experian failed to apply adequate identity-matching and duplicate-account controls before publication.

54. Trans Union furnished reports after receiving a direct dispute of the adverse accounts while its file still contained an inaccurate current address, an internally contradictory Toyota status, and an unexplained JPMCB chronology. Its continued reporting supports a plausible inference that Trans Union failed to compare narrative status, historical payment data, consumer-supplied identity information, and reporting-period fields before publication.

55. The challenged information was patently incorrect or was presented in a manner sufficiently misleading to be expected to have an adverse effect on Plaintiff. The inaccuracies were not immaterial formatting differences. They concerned the existence, amount, timing, identity, and severity of adverse credit data.

56. Reasonable procedures would have detected the internal contradictions and identity defects from information already in each Defendant's possession, especially after Plaintiff's direct disputes triggered account-level review. Defendants' failure to detect and correct those defects before furnishing reports violated 15 U.S.C. § 1681e(b).

57. The inaccurate or materially misleading reports were a substantial factor in the American Express and Discover denials and caused the injuries alleged above.

58. Each Defendant's noncompliance was at least negligent under 15 U.S.C. § 1681o. Plaintiff also alleges willfulness under 15 U.S.C. § 1681n in the alternative because each Defendant continued publication after receiving direct notice that the identified accounts were disputed while its own file displayed objectively verifiable defects, creating an unjustifiably high risk of violating the statutory command of maximum possible accuracy.

## VI. COUNT II: FAILURE TO CONDUCT A REASONABLE REINVESTIGATION 15 U.S.C. § 1681i(a), Against All Defendants

59. Plaintiff incorporates paragraphs 1 through 58 as if fully stated here.

60. Plaintiff directly notified each Defendant that he disputed the accuracy and completeness of identified items in his file. The disputes identified the accounts, supplied account identifiers, and requested reinvestigation and correction or deletion.

61. The disputed accounts contained objectively and readily verifiable facts, including payment dates, balances, current and historical status, account differentiation, and the consistency of narrative descriptions with payment histories.

62. Each Defendant processed the dispute but continued to maintain material inaccuracies or misleading inconsistencies. The persistence of defects visible within the same disclosures supports a plausible inference that the reinvestigations were cursory and did not evaluate the account information Plaintiff placed in dispute.

63. Equifax's reinvestigation was unreasonable because it left conflicting payment dates and conflicting current-status information in its file even while deleting two other accounts. A reasonable account-level review would have compared the header fields with the payment history and resolved which data were current.

64. Experian's reinvestigation was unreasonable because it continued indistinguishable JPMCB entries, then used standardized result labels without resolving or explaining that concrete defect. A reasonable reinvestigation would have differentiated the two obligations before treating them as verified or remaining.

65. Trans Union's reinvestigation was unreasonable because it continued the contradictory Toyota and JPMCB fields after receiving Plaintiff's account-specific dispute. A reasonable reinvestigation would have checked the disputed fields against Trans Union's own history and the underlying account information.

66. On information and belief, Defendants either failed to forward all relevant dispute information to the respective furnishers as required by 15 U.S.C. § 1681i(a)(2), failed to evaluate the furnishers' responses against the specific contradictions, or both. The exact transmission records and internal review notes are within Defendants' exclusive possession.

67. To the extent any disputed field could not be verified after a reasonable reinvestigation, Defendants were required to delete or modify it under 15 U.S.C. § 1681i(a)(5). They did not do so for the unresolved fields described above.

68. The unreasonable reinvestigations and failures to correct or delete were a direct and proximate cause of the continued August 30 publications, the two credit denials, and Plaintiff's resulting injuries.

69. Each Defendant's noncompliance was at least negligent under 15 U.S.C. § 1681o. Plaintiff also alleges willfulness under 15 U.S.C. § 1681n in the alternative because each Defendant had actual notice that the identified accounts were disputed, then used a process that left objectively verifiable defects unresolved before further publication.

## VII. DAMAGES

70. The FCRA authorizes recovery of actual damages for negligent noncompliance and actual or statutory damages, punitive damages, costs, and reasonable attorney's fees for willful noncompliance.

71. Plaintiff's actual damages include the loss of two credit opportunities, harm to his credit reputation from publication of materially inaccurate or misleading information to American Express and Discover, and the time and effort reasonably incurred attempting to correct the files.

72. The nature and amount of additional actual and punitive damages depend in part on Defendants' internal procedures, dispute transmissions, reinvestigation records, and the contents of the reports furnished to the two lenders, all of which are within Defendants' possession and subject to discovery.

## VIII. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and award:

A. Actual damages under 15 U.S.C. §§ 1681n and 1681o in an amount determined by the jury;

B. Statutory damages for each willful violation as authorized by 15 U.S.C. § 1681n;

C. Punitive damages for willful noncompliance as authorized by 15 U.S.C. § 1681n;

D. Costs and any reasonable attorney's fees recoverable under 15 U.S.C. §§ 1681n and 1681o;

E. Prejudgment and postjudgment interest to the extent permitted by law; and

F. Any other relief the Court determines is just and authorized by law.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on every issue so triable.

9/2/26

Respectfully submitted,
/s/ Edward Fielding Hucks
**EDWARD FIELDING HUCKS**
5 Chapel Creek Road
Pawleys Island, South Carolina 29585-5218
field@georgetownacres.com
Plaintiff